UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BRENDA DRAKE, *on behalf of herself and others similarly situated*,<br><br>　　　　　　　　　Plaintiff,<br><br>vs.<br><br>MRS BPO, LLC,<br><br>　　　　　　　　　Defendant. | Civil Action No.: 1:19-CV-01543<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Brenda Drake ("Plaintiff"), individually and on behalf of others similarly situated, alleges on personal knowledge, investigation of her counsel, and information and belief, as follows:

**Nature of this Action**

1.　Plaintiff brings this class action against MRS BPO, LLC ("MRS" or "Defendant") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2.　Section 227(b)(1)(A)(iii) of the TCPA sets forth restrictions on the use of automated telephone equipment, and provides in pertinent part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A)　to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> 　　　　　　　　　*****
>
> (iii)　to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call,

1

unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]

3. Upon information and good faith belief, Defendant routinely violates 47 U.S.C. § 227(b)(1)(A)(iii) by using an automatic telephone dialing system to place, or cause to be placed, non-emergency calls to telephone numbers assigned to a cellular telephone service, without prior express consent, in that it sends, or causes to be sent, autodialed debt collection text messages—which constitute "calls" under the TCPA—to wrong or reassigned cellular telephone numbers.

## Jurisdiction

4. This Court has subject matter jurisdiction under 47 U.S.C. § 227(b)(3) and 28 U.S.C. § 1331.

5. Venue is proper before this Court under 28 U.S.C. § 1391(b), as Defendant transacts business in this district and as a substantial part of the events giving rise to this action occurred in this district.

6. In particular, MRS directed its text messages to Plaintiff's cellular telephone number in this district, and Plaintiff received MRS's text messages while in this district.

## Parties

7. Plaintiff is a natural person who at all relevant times resided in Fishers, Indiana.

8. Defendant MRS is a limited liability company with its principal place of business in Cherry Hill, New Jersey.

## The Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227

9. In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227. The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

10. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers," and artificial or prerecorded messages.

11. Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers or prerecorded messages to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

12. The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(b)(1)(A)(iii).

13. This statutory language dictates that "the term 'automatic telephone dialing system' means equipment which has the capacity—(1) to store numbers to be called *or* (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018) (emphasis added), *cert. dismissed,* 139 S. Ct. 1289 (2019).[2]

14. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

---

[2] In the past, the FCC has held that this definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, ¶ 133 (2003); *see also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C. 2008) (rejecting argument that a dialing system "meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective").

15. The FCC also recognized that wireless customers are charged for incoming calls and text messages whether they pay in advance or after the minutes or texts are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

16. The 2003 FCC order defined a predictive dialer as "an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call." *Id.* at 14,143 n. 31.

17. The FCC concluded that "[t]he basic function of such equipment . . . [is] the capacity to dial numbers without human intervention." *Id.* at 14,092.

18. A 2008 Declaratory Ruling "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2008 FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

19. And in yet another order issued in 2012, the FCC again reiterated that the TCPA's definition of an ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 15391, 15399 (2012).

20. Further, courts have long held that a "called party" under the TCPA is the recipient of the call or text, not the party the caller was intending to reach. *See, e.g.*, *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir. 2014); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-39 (7th Cir. 2012).

21. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party. *2008 FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

22. The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *Id*.

23. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the *text message*).

24. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided it with prior express consent. *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

### Factual Allegations

25. In approximately May 2018, Plaintiff was assigned a new cellular telephone number, (317)-XXX-6386.

26. Plaintiff is the subscriber to and customary user of her cellular telephone number.

27. Plaintiff pays the monthly bill for her cellular telephone number.

28. In connection with the collection of a debt alleged to be owed to Verizon Wireless, MRS sent text messages to Plaintiff's cellular telephone number.

29. MRS sent it text messages to Plaintiff's cellular telephone number from (833) 516-9363.

30. Upon placing an outbound call to telephone number (833) 516-9363, a prerecorded message states, "Hi, thank you for calling MRS Associates…."

31. MRS sent several debt collection messages to Plaintiff's cellular telephone.

32. For example, on April 2, 2019, MRS, on behalf of Verizon, sent the following message:



33. MRS's text messages referred to (866) 246-0218 as the call back number.

34. Upon placing an outbound call to telephone number (866) 246-0218, a prerecorded message states, "Hi, thank you for calling MRS Associates …."

35. Plaintiff does not have, and never had, an account with Verizon.

36. Plaintiff never provided her cellular telephone number to Verizon.

37. Plaintiff never provided her cellular telephone number to MRS.

38. Upon information and good faith belief, the person MRS intended to reach on Verizon's behalf was a Verizon customer.

39. Upon information and good faith belief, Defendant's records will show each text message it sent, or caused to be sent, to Plaintiff's cellular telephone number by using an automatic telephone dialing system.

40. Upon information and good faith belief, and in light of the frequency, number, nature, and character of the text messages at issue, MRS sent its text messages to Plaintiff's cellular telephone number by using an automatic telephone dialing system.

41. Upon information and good faith belief, and in light of the frequency, number, nature, and character of the text messages at issue, MRS sent its text messages to Plaintiff's cellular telephone numbers by using "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks*, 904 F.3d at 1053.

42. Upon information and good faith belief, MRS sent its text messages to Plaintiff's cellular telephone number for non-emergency purposes.

43. Upon information and good faith belief, MRS sent its text messages to Plaintiff's cellular telephone number voluntarily.

44. Upon information and good faith belief, MRS intended to use an automatic telephone dialing system to send its text messages to Plaintiff's cellular telephone number.

45. Plaintiff is not, nor was, one of Verizon's customers.

46. Plaintiff does not, nor did, have a business relationship with Verizon.

47. Plaintiff does not, nor did, have a business relationship with MRS.

48. Plaintiff did not give MRS prior express consent to send text messages to her cellular telephone number by using an automatic telephone dialing system.

49. Plaintiff suffered actual harm as a result of MRS's text messages at issue in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

50. Upon information and good faith belief, MRS, as a matter of pattern and practice, uses an automatic telephone dialing system to send text messages to telephone numbers assigned to a cellular telephone service, absent prior express consent.

### Class Action Allegations

51. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following class, subject to amendment as appropriate:

> All persons throughout the United States (1) to whom MRS BPO, LLC sent, or caused to be sent, a text message, (2) directed to a number assigned to a cellular telephone service, but not assigned to the intended recipient of MRS BPO, LLC's text messages, (3) by using an automatic telephone dialing system, (4) within the four years preceding the date of this complaint through the date of class certification.

52. Excluded from the class are Defendant, Defendant's officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

53. The proposed class is so numerous that, upon information and belief, joinder of all members is impracticable.

54. The exact number of members of the class is unknown to Plaintiff at this time and can only be determined through appropriate discovery.

55. The proposed class is ascertainable because it is defined by reference to objective criteria.

56. In addition, and upon information and good faith belief, the cellular telephone numbers of all members of the class can be identified in business records maintained by Defendant and third parties.

57. Plaintiff's claims are typical of the claims of the members of the class because all of the class members' claims originate from the same conduct, practice and procedure on the part of Defendant, and Plaintiff possesses the same interests and has suffered the same injuries as each class member.

58. Like all members of the proposed class, Plaintiff received autodialed text messages from MRS, without her consent, on her cellular telephone, in violation of 47 U.S.C. § 227.

59. Plaintiff will fairly and adequately protect the interests of the members of the class and has retained counsel experienced and competent in class action litigation.

60. Plaintiff has no interests that are irrevocably contrary to or in conflict with the members of the class that she seeks to represent.

61. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.

62. Furthermore, as the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the class to individually redress the wrongs done to them.

63. There will be little difficulty in the management of this action as a class action.

64. Issues of law and fact common to the members of the class predominate over any questions that may affect only individual members, in that Defendant has acted on grounds generally applicable to the class.

65. Among the issues of law and fact common to the class are:

   a. Defendant's violations of the TCPA;

      b. MRS's use of an automatic telephone dialing system, as defined by the TCPA, to send text messages to cellular telephone numbers;

      c. MRS's practice of sending text messages to wrong or reassigned cellular telephone numbers; and

      d. the availability of statutory damages.

66. Absent a class action, Defendant's violations of the law will be allowed to proceed without a full, fair, judicially supervised remedy.

## Count I
### Violation of 47 U.S.C. § 227(b)(1)(A)(iii)
### On Behalf of Plaintiff and the Class

67. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-66.

68. MRS violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an automatic telephone dialing system to send text messages to Plaintiff's cellular telephone number, without her consent.

69. As a result of MRS's violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff and the members of the class are entitled to damages in an amount to be proven at trial.

### Trial by Jury

Plaintiff is entitled to, and demands, a trial by jury.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

      a) Determining that this action is a proper class action;

      b) Designating Plaintiff as the class representative under Federal Rule of Civil Procedure 23;

      c) Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

      d) Adjudging that Defendant violated 47 U.S.C. § 227(b)(1)(a)(iii);

e) Enjoining Defendant from continuing to send, or cause to be sent, text messages to Plaintiff's cellular telephone number, and from continuing to send text messages to the cellular telephone numbers of members of the proposed class, without prior express consent;

f) Awarding Plaintiff and the class damages under 47 U.S.C. § 227(b)(3)(B);

g) Awarding Plaintiff and the class treble damages under 47 U.S.C. § 227(b)(3);

h) Awarding Plaintiff and the class reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i) Awarding Plaintiff and the members of the class and subclass any pre-judgment and post-judgment interest as may be allowed under the law; and

j) Awarding such other and further relief as the Court may deem just and proper.

Date: April 18, 2019

s/ *Gary M. Klinger*
Gary M. Klinger
Kozonis & Klinger, Ltd.
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Telephone: 312.283.3814
Fax: 773.496.8617
gklinger@kozonislaw.com

Michael L. Greenwald
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, Florida 33487
Telephone: 561.826.5477
Fax: 561.961.5684
mgreenwald@gdrlawfirm.com

Counsel for Plaintiff and the proposed class